**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>   )<br>   Plaintiff,   )<br>   )          CRIMINAL ACTION<br>v.         )<br>   )          No. 12-20066-40-KHV<br>CARLOS GILCHRIST,   )<br>   )<br>   Defendant.   )<br>_____)| |

**MEMORANDUM AND ORDER**

A grand jury charged Carlos Gilchrist and some 50 other defendants with conspiracy to manufacture, to possess with intent to distribute and to distribute 280 grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing cocaine. See Second Superseding Indictment (Doc. #402), Count 1. The grand jury also charged Gilchrist with three counts of distribution or possession with intent to distribute cocaine base. See id., Counts 36, 38, 39. This matter is before the Court on defendant's Motion To Suppress Evidence (Doc. #764) filed June 10, 2013. On July 17, 2013, the Court held a hearing on the motion. For reasons stated below, the Court overrules defendant's motion.

**Factual Background**

Based on testimony and exhibits received at the hearing, the Court finds the following facts:

In October of 2010, the United States Drug Enforcement Administration ("DEA") initiated an investigation into the distribution of cocaine by an organization run by Djuane Sykes and his associates, a street gang in Kansas City, Kansas known as "Deuce Deuce." Special Agent Nicholas Wills and Task Force Officer Eric Jones led the investigation which involved the interception of 43 cellular telephones, including multiple roving Title III intercepts on Hector Aguilera. Based on

the initial intercepts of three of Sykes's telephones, officers identified multiple layers of sources of cocaine which was being funneled by various means from Mexico to the Kansas City metropolitan area.

Before August 24, 2011, law enforcement had made numerous controlled purchases of "crack" cocaine from Sykes. In addition, agents had stopped numerous individuals after they had had recent contact with Sykes and found U.S. currency, "crack" cocaine and/or powder cocaine in their possession.

On August 24, 2011, at approximately 3:15 p.m., DEA personnel established surveillance of the 2200 block of Russell, to monitor drug activity in the area. Based upon GPS ping information, agents believed that Sykes was at or near the residence at 2258 Russell. Officer Jones saw individuals (later identified as Steven Easley and Maurice Deloney) arrive in a gold Chevy Malibu. Easley exited the vehicle, briefly met with a black male, appeared to conduct a hand-to-hand transaction with him, got back into the vehicle and drove away with Deloney. Agents followed Easley's vehicle. Shortly thereafter, a police officer for Kansas City, Kansas stopped the vehicle and took Deloney into custody after observing a clear plastic bag containing .64 grams of "crack" cocaine sitting between his feet.

Shortly thereafter, agents observed a green Volkswagen Jetta stop in front of 2258 Russell, then park on the north side of Russell facing west. The Jetta belonged to Daniel Munoz-Rodriguez (a known source of supply for Sykes) and his brother Martin Munoz-Rodriguez was driving it. Agents observed Sykes walk to the passenger door of the Jetta with a red bag on his shoulder.[1]

---

[1] On prior occasions, agents had seen Sykes reach into a similar red bag and break off a portion of cocaine from a brick of cocaine contained in the bag.

Sykes got into the vehicle. He exited a short time later with the red bag, then walked back toward 2258 Russell. The Jetta left the area.

A short time later, Officer Jones saw a green Cadillac pull in front of 2258 Russell. A black male, later identified as defendant, exited the front passenger door and walked toward 2258 Russell. After a few minutes, defendant walked back, got into the passenger side of the vehicle and left the area. Agents followed the Cadillac to 2008 N. 6th Street, Kansas City, Kansas, where it stopped. Defendant exited the vehicle and started to walk toward 2008 N. 6th, which was later determined to be his residence. Agent Wills and Tim McCue, a special agent with the DEA, approached defendant and identified themselves as police officers.

Agents asked defendant where he was coming from and he replied, "O'Reilly Autoparts." McCue put his hands on defendant and started to turn him around to conduct a pat down search for weapons. As McCue did so, he asked defendant if there was anything on him that they needed to know about. Defendant responded that he had two ounces of cocaine in his pocket. Agents recovered a bag containing .65 grams of cocaine from defendant's right front pants pocket and handcuffed him. Defendant and his wife, who was in the residence, consented to a search of the residence. During the search, Officer Jones found a set of digital scales in the top dresser drawer in the bedroom.

Defendant seeks to suppress his statement and the digital scales which officers recovered from his residence.

## **Analysis**

Defendant argues that (1) officers did not have reasonable suspicion that he was involved in criminal activity to justify an investigatory stop, (2) officers should not have conducted a pat

down search because they did not have evidence that he was armed and (3) officers exceeded the scope of a pat down search for weapons when they asked a general exploratory question whether he had anything on him they needed to know about.

## I. Investigatory Detention

The Fourth Amendment of the United States Constitution protects persons and their houses, papers and effects against unreasonable searches and seizures. See U.S. Const. amend. IV. The Tenth Circuit has defined three categories of police/citizen encounters: (1) voluntary cooperation in response to non-coercive questioning; (2) investigatory; and (3) arrest. United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir.) (citing United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir.), cert. denied, 467 U.S. 1255 (1984)), cert. denied, 513 U.S. 862 (1994); see Terry v. Ohio, 392 U.S. 1 (1968). This case involves the second category: an investigatory or Terry stop. See United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005) (traffic stops are seizures analogous to investigative detentions).

A stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." Brendlin v. California, 551 U.S 249, 255 (2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)). In deciding whether an investigatory detention is permissible, the Court must determine both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. Law enforcement officers may stop and briefly detain a person for investigative reasons if the officer has a reasonable suspicion that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion requires a "particularized and objective basis for suspecting the particular

person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). After an officer resolves the concern that justified the initial stop, any further detention must be supported by a reasonable suspicion of criminal activity. See United States v. Alarcon-Gonzalez, 73 F.3d 289, 292-93 (10th Cir. 1996). Thus, "reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout." United States v. Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir.), cert. denied, 525 U.S. 853 (1998). "Specific and articulable facts" are necessary to support a finding of reasonable suspicion; an inchoate and unparticularized suspicion or hunch is inadequate. Terry, 392 U.S. at 21. In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, Sokolow, 490 U.S. at 8, including the collective knowledge of those officers involved in the investigation, United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997). The Court evaluates the officers' conduct "in light of common sense and ordinary human experience," deferring to "the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Stephenson, 452 F.3d 1173, 1176 (10th Cir. 2006) (internal quotation marks and citations omitted). The government bears the burden of proving the reasonableness of the officers' suspicion. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998); see also United States v. Lutz, 207 F. Supp.2d 1247, 1255 (D. Kan. 2002) (government must show traffic stop justified by reasonable articulable suspicion of illegal activity).

Agents had reasonable suspicion that defendant was involved in purchasing or distributing cocaine based on (1) intercepted phone calls about the distribution of cocaine by Sykes and his associates, (2) numerous controlled purchases of crack cocaine from Sykes and his associates including purchases from various residences in the 2200 block of Russell, (3) the GPS ping

information which indicated that Sykes was at or near 2258 Russell the afternoon of August 24, 2011, (4) surveillance which indicated that around 3:15 p.m. on August 24, 2011, two individuals made a brief stop in the area of 2258 Russell and when officers pulled them over shortly thereafter, they had .64 grams of crack cocaine, (5) surveillance which indicated that shortly after 3:15 p.m., a vehicle which belonged to a known source of supply for Sykes stopped in front of 2258 Russell, (6) Sykes carried a red bag from the residence and got into the vehicle and then exited the vehicle with the red bag (which he had used on prior occasions to carry a brick of cocaine) and walked back toward 2258 Russell, and (7) the circumstances of defendant's brief stop a short time thereafter in front of 2258 Russell.

Even though a short stop at the residence of a suspected narcotics dealer might have an innocent explanation, officers may detain individuals to resolve the ambiguity, particularly where the stop at the residence follows shortly after the suspected delivery of cocaine to the residence. See United States v. Ramirez, 479 F.3d 1229, 1244 (10th Cir. 2007) (short stay at residence of suspected drug dealer may be innocent, but courts accord deference to trained law enforcement officer's ability to distinguish between innocent and suspicious conduct) (citing United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997)); see also United States v. Arvizu, 534 U.S. 266, 277 (2002) (reasonable suspicion need not rule out possibility of innocent conduct); Illinois v. Wardlow, 528 U.S. 119, 126 (2000) (Terry accepts risk that officers may stop innocent people). Based on the totality of the circumstances, officers had an objectively reasonable and articulable suspicion that defendant was involved in the purchase or distribution of cocaine and they were justified in detaining defendant for questioning. See Soto, 988 F.2d at 1554. Accordingly, the Court overrules defendant's motion on the ground that officers did not have reasonable suspicion for an investigative detention.

**II.      Terry Frisk For Weapons**

Defendant argues that (1) officers should not have conducted a pat down search because they did not have evidence that he was armed and (2) the officers exceeded the scope of a pat down search when they asked a general exploratory question whether defendant had anything on him the officers needed to know about.  Based on the testimony at the hearing on defendant's motion, the Court finds that as he was turning defendant around, before he started to conduct a protective pat down search for weapons, Agent McCue asked defendant if he had anything on him that they needed to know about.  Even so, the Court evaluates whether Agent McCue's decision to conduct a pat down search for weapons was lawful.

A.      Lawfulness Of Pat Down Search

During an investigative detention, police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo.  United States v. Garcia, 459 F.3d 1059, 1063 (10th Cir. 2006); United States v. Gama-Bastidas, 142 F.3d 1233, 1240 (10th Cir. 1998).  In some circumstances, these safety measures may include a pat-down search for weapons.  Garcia, 459 F.3d at 1063 (citing Terry, 392 U.S. at 21-24).  Because the purpose of the limited pat-down search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence, a Terry frisk is only valid if it is confined to a search for weapons.  Garcia, 459 F.3d at 1063; United States v. Manjarrez, 348 F.3d 881, 886-87 (10th Cir. 2003), cert. denied, 541 U.S. 911 (2004).  Moreover, because the sole justification of the search is to protect the police officer and others nearby, it must therefore be confined in scope to an intrusion reasonably designed to discover "guns, knives, clubs, or other hidden instruments for the assault of the police officer." United States v. Harris, 313 F.3d 1228, 1234 (10th Cir. 2002), cert. denied, 537 U.S. 1244 (2003).  An officer need

not be absolutely certain that an individual is armed before taking protective measures such as a pat-down search, but he must harbor an articulable and reasonable suspicion that the person is armed and dangerous.  Garcia, 459 F.3d at 1063; United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996).

Here, because officers had reasonable suspicion that defendant had just purchased cocaine or received drug proceeds from Sykes, Agent McCue had an articulable and reasonable suspicion that defendant was armed.  See United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006) (individual's involvement with drug transactions or distribution can support reasonable suspicion to frisk that individual for weapons); United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) (because weapons and violence are frequently associated with drug transactions, reasonable for officer to believe person may be armed and dangerous when person is suspected of being involved in drug transaction); United States v. Johnson, 364 F.3d 1185, 1194–95 (10th Cir. 2004) (weapons frisk permissible because officer reasonably suspected defendant might be involved in drug dealing which is crime typically associated with weapons); Hishaw, 235 F.3d at 570 (evidence supporting reasonable suspicion that suspect was distributing drugs also indicated that he might be armed and dangerous); see also United States v. Albert, 579 F.3d 1188, 1194 (10th Cir. 2009) (evidence of drug possession further elevated danger of police-suspect encounter).  Agent McCue's decision to conduct a pat down frisk for weapons was therefore valid under Terry.

      B.      Scope Of Pat Down Search

When Agent McCue turned defendant around to conduct a pat down, he did not tell defendant he was under arrest and he merely continued to question defendant.  A reasonable person in defendant's position would not have believed that he was under arrest.  Agent McCue could

continue to ask defendant questions as he prepared to do a pat down search for weapons. See United States v. Griffin, 696 F.3d 1354, 1362 (11th Cir. 2012) (absent prolonged detention, unrelated questions posed during valid Terry stop do not create discrete Fourth Amendment event); United States v. Brissey, No. 2:11-cr-0002-JMS-CMM, 2012 WL 1390197, at *4 (S.D. Ind. Apr. 20, 2012) (questioning during pat down permissible because defendant not "in custody"); United States v. Wyatt, 179 F.3d 532, 536 (7th Cir. 1999) (individual subjected to pat-down search not in custody for purposes of Miranda); see also United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006) (as long as unrelated questioning does not extend length of detention, no Fourth Amendment issue with respect to content of questions); United States v. Childs, 277 F.3d 947, 949 (7th Cir. 2002) (en banc) (questions that do not increase length of detention or extend it only briefly do not make custody itself unreasonable or require suppression of evidence found because of answers).[2] The Court therefore overrules defendant's argument that Agent McCue exceeded the scope of a pat

---

[2] Even if defendant was "under arrest" when he made the statement regarding cocaine in his pocket, the public safety exception allows an officer to question a suspect in custody without first giving a Miranda warning if the questions arise out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon." New York v. Quarles, 467 U.S. 649, 659 n.8 (1984). As Agent McCue turned defendant around to conduct a pat down search for weapons, he asked defendant if he had anything "on him" that they should know about. Based on the timing and context of the question in relation to the pat down search for weapons, Agent McCue's question was reasonably prompted by a concern for safety, and was not designed solely to elicit testimonial evidence from defendant. See United States v. Reyes, 434 F. Supp.2d 58, 63 (D. Mass. June 13, 2006) (defendant's pre-Miranda admission that he had bag of weed in response to Officer Cogavin's appropriate question of whether he had anything on him admissible because question was prompted by legitimate safety concerns); see also United States v. Lackey, 334 F.3d 1224, 1227-28 (10th Cir. 2003) (pre-Miranda question asking arrested defendant whether he had any guns or sharp objects within public safety exception). Agent Wills said that he conducts pat down searches in a similar manner and when he asks suspects if they have anything on them, he is referring to any needles, weapons, knives, guns, or anything that might harm him when he conducts the frisk.

down search for weapons when he asked whether defendant had anything on him that the officers needed to know about.

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress Evidence (Doc. #764) filed June 10, 2013 be and hereby is **OVERRULED**.

Dated this 1st day of August, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge