IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNTIED STATES OF AMERICA,

        Plaintiff,

v.

                                              Case No. 12-20066-40-KHV

CARLOS GILCHRIST,

        Defendant.

## ORDER

Carlos Gilchrist was arrested and charged with drug-related crimes. On the day his trial was to begin, he decided to enter a plea of guilty, which was accepted by the undersigned U.S. Magistrate Judge, James P. O'Hara (ECF doc. 929).[1] Mr. Gilchrist has now filed a motion to withdraw his guilty plea pursuant to Fed. R. Crim. P. 11(d)(2), claiming the government committed a *Brady*[2] violation by failing to disclose information prior to a suppression hearing and, ultimately, the entry of his plea **(ECF doc. 1166)**. He has also filed a motion to disqualify Assistant U.S. Attorney Terra Morehead from any proceedings concerning his motion to withdraw his plea, stating that he would like to subpoena Ms. Morehead to testify at any hearing held on the motion to withdraw **(ECF doc. 1250)**. Finally, Mr. Gilchrist has moved to continue a hearing that was previously

---

[1]Mr. Gilchrist consented to proceed before a magistrate judge. ECF doc. 930.

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

scheduled for January 29, 2014, to address any questions the court had regarding his motion to withdraw his plea **(ECF doc. 1249)**.

The court has reviewed the briefs and determines that a hearing on this matter is not necessary. As is explained below, the resolution of the motion to withdraw the entry of the guilty plea turns on legal, rather than factual, issues. Thus, Mr. Gilchrist's motions to continue the hearing and to disqualify Ms. Morehead are denied as moot. Ultimately, the court also denies the motion to withdraw the entry of the plea because Mr. Gilchrist has not demonstrated a fair and just reason for the withdrawal.

**I.    Background**

In a second superseding indictment issued on October 3, 2012, a grand jury charged Mr. Gilchrist and some fifty other defendants with conspiracy to manufacture, to possess with intent to distribute, and to distribute 280 grams or more of cocaine base ("crack cocaine"), and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii) & (iii), and 21 U.S.C. § 846.[3] It further charged Mr. Gilchrist with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), and 18 U.S.C. § 2, based on Mr. Gilchrist's actions on August 24, 2011.[4] The court designated the case as "complex" under 18 U.S.C. § 3161(h)(7),[5] and discovery proceeded pursuant to a general order of discovery.[6]

---

[3]ECF doc. 402 (Count 1).

[4]*Id.* (Count 39).

[5]ECF doc. 287.

On June 10, 2013, Mr. Gilchrist filed a motion to suppress evidence seized from his person and residence, as well as all statements he made to law enforcement, following his detention and ultimate arrest on August 24, 2011.[7] Mr. Gilchrist argued his detention was illegal because it was not based on reasonable suspicion, and the subsequent pat down of his person was illegal because he presented no articulable risk of harm to law enforcement or others. At a suppression hearing held before the presiding U.S. District Judge, Kathryn H. Vratil, the government only presented one witness, Special Agent Nick Wills, who led the investigation into the alleged conspiracy.[8] Agent Wills testified that he was present when Special Agent Tim McCue detained and frisked Mr. Gilchrist, and described what he allegedly observed. Mr. Gilchrist testified on his own behalf and disputed Agent Wills's account of the detention and pat down by Agent McCue. On August 1, 2013, Judge Vratil denied Mr. Gilchrist's motion to suppress evidence.[9]

The trial of Mr. Gilchrist and eight of his co-defendants was scheduled to begin on August 5, 2013. Before the trial began that day, however, Mr. Gilchrist notified the court of his desire to plead guilty. Mr. Gilchrist and the government entered into a written plea agreement, whereby Mr. Gilchrist agreed to plead guilty to the conspiracy charge and the

---

[6]ECF doc. 288.

[7]ECF doc. 764.

[8]ECF doc. 902.

[9]ECF doc. 922.

government agreed to dismiss the drug possession charge stemming from Mr. Gilchrist's alleged actions on August 24, 2011.[10] The undersigned accepted Mr. Gilchrist's guilty plea that afternoon during a hearing that included a detailed Fed. R. Crim. P. 11 colloquy.[11]

On December 16, 2013, Mr. Gilchrist filed the present motion to withdraw his plea of guilty. He asserts that at some unstated time "[a]fter the plea hearing, Mr. Gilchrist's counsel learned from a fellow defense attorney that there was evidence of misconduct by Agents Jones and McCue that should have been turned over to the defense by the government under *Giglio*[12] and the General Discovery Order."[13] Based on the government's alleged *Giglio/Brady* violation, Mr. Gilchrist would like the opportunity to renew his motion to suppress. If the renewed motion to suppress is denied and the case proceeds to trial, Mr. Gilchrist would like the opportunity to call Agent McCue as a witness to evaluate his written report about statements Mr. Gilchrist allegedly made after his arrest.

## II. Legal Standards

---

[10] ECF doc. 932.

[11] ECF doc. 929.

[12] *Giglio v. United States*, 405 U.S. 150 (1972).

[13] ECF doc. 1166 at 6. Mr. Gilchrist's motion does not go on to explain what *Giglio/Brady* information was ever learned about Agent Jones, nor how any such information would affect the voluntariness of his guilty plea. The government states in its brief that there is not "even a scintilla of evidence concerning the existence of anything that could be remotely viewed as misconduct by TFO Jones." ECF doc. 1184 at 6. Mr. Gilchrist did not file any reply brief to dispute the government's assertion in this regard. Thus, the court will not consider Mr. Gilchrist's unsupported reference to Agent Jones.

A defendant may withdraw a plea of guilty before sentencing if he shows "a fair and just reason for requesting the withdrawal."[14] The Tenth Circuit has set out seven factors for courts to consider in evaluating whether a defendant has met his burden of showing a fair and just reason for withdrawal:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.[15]

The court should "view a motion to withdraw with favor, granting the defendant 'a great deal of latitude.'"[16] Ultimately, however, it is within the sound discretion of the trial court to determine what circumstances justify granting such a motion.[17]

### III. Analysis

Mr. Gilchrist relies primarily on the sixth factor in seeking to set aside his guilty plea, arguing it was not knowing and voluntary because the government failed to disclose possibly impeaching or exculpatory evidence in violation of *Brady* and *Giglio*. The court will therefore address that factor first, before going on to briefly consider the other six

---

[14] Fed. R. Crim. P. 11(d)(2)(B).

[15] *United States v. Byrum*, 567 F.3d 1255, 1264 (10th Cir. 2009).

[16] *United States v. Sandoval*, 390 F.3d 1294, 1297 (10th Cir. 2004) (quoting *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990)).

[17] *Id.* at 1298.

factors.

*Whether the plea was knowing and voluntary.* "A guilty plea is void if it is not knowing and voluntary."[18] Mr. Gilchrist asserts he could not have knowingly entered his guilty plea because, at the time, he was not aware of conduct by Agent McCue that would tend to show his character for untruthfulness.[19] Specifically, Mr. Gilchrist states the government did not disclose the civil case of *Bowling v. United States*,[20] in which an arrestee sued Agent McCue and others for assault, battery, and excessive force. After a bench trial in that case, the presiding U.S. District Judge, Julie A. Robinson, issued a written opinion in which she found much of Agent McCue's testimony "not credible"[21] and ultimately granted judgment for the plaintiff. Mr. Gilchrist argues that the government was required to disclose such information pursuant to *Brady* and *Giglio*, as well as by the order of discovery in this case which specifically requires production of *Brady/Giglio* material.[22] According to Mr. Gilchrist, the written custodial report created by Agent

---

[18] *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000).

[19] ECF doc. 1166 at 10 ("[K]nowledge of *Giglio* material was essential in Mr. Gilchrist's determination of whether to enter a plea.").

[20] 740 F. Supp. 2d 1240 (D. Kan. 2010).

[21] *Id.* at 1259.

[22] *See* ECF doc. 288 at 5 ("Pursuant to *Brady* and *Giglio* and their progeny, the government shall produce any and all evidence in its possession, custody or control which would tend to exculpate the defendant (that is, evidence which is favorable and material to a defense), or which would constitute impeachment of government witnesses, or which would serve to mitigate punishment, if any, which may be imposed in this case.").

McCue recounting a post-arrest interview between Mr. Gilchrist and Agent McCue is erroneous. In that report, Agent McCue noted that Mr. Gilchrist admitted making weekly purchases of cocaine since June 2001 from Djuane Sykes, the person at the center of the alleged conspiracy, and described how he converted the purchased cocaine into crack cocaine. Mr. Gilchrist disputes he made any such admissions. He states that, had he known of the *Bowling* case, he would have called Agent McCue as a witness at the suppression hearing and, if necessary, at a future trial, to test his credibility. He further asserts the *Bowling* case could have been used at the suppression hearing to show that Agent McCue tends to be overly aggressive in detaining citizens.

Under *Brady*, the government is required to provide a defendant, prior to trial, any evidence favorable to the accused and material to guilt or punishment.[23] *Giglio* held that evidence which could be used to impeach a witness falls under *Brady*'s purview.[24] Nonetheless, Mr. Gilchrist's argument that his plea was not knowing and voluntary because of a *Brady/Giglio* violation fails for a number of reasons.

First, the Supreme Court effectively foreclosed this argument in *United States v. Ruiz*.[25] The defendant in *Ruiz* appealed her sentence, which was entered after she pleaded guilty. The Ninth Circuit vacated the sentence because it found the government had

---

[23] *Brady*, 373 U.S. at 87.

[24] *Giglio*, 405 U.S. at 766; *Smith v. Sec'y N.M. Dep't of Corr.*, 50 F.3d 801, 825 (10th Cir. 2005).

[25] 536 U.S. 622, 629 (2002).

refused to recommend a sentencing departure solely because the defendant would not waive her right to *Brady* information.[26] The Supreme Court rejected the Ninth Circuit's ruling, which it characterized as holding "that a guilty plea is not 'voluntary' . . . unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial."[27] The Supreme Court held that prosecutors have no obligation to disclose material impeachment information prior to a defendant's plea of guilty to ensure the plea is knowing and voluntary.[28] The Court reasoned that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')."[29] The Court went on to say, "It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant."[30]

---

[26] *United States v. Ruiz*, 241 F.3d 1157 (9th Cir. 2001).

[27] *Ruiz,* 536 U.S. at 628.

[28] *Id.* at 633 ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

[29] *Id.* at 629 (emphasis and modification in original). *See also id.* at 634 (Thomas, J., concurring) ("The principle supporting *Brady* was 'avoidance of an unfair trial to the accused.' *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.ED.2d 215 (1963). That concern is not implicated at the plea stage regardless.").

[30] *Id.* at 630; *see also, id.* at 631 (noting that due-process considerations which

Applying *Ruiz*, the Tenth Circuit has rejected the argument that a guilty plea is not knowing and voluntary when the government withholds "information regarding the credibility and qualifications of an arresting officer."[31]  In *United States v. Johnson*, the defendant argued that "his plea was not knowing or voluntary because he did not know that he was giving up a claim that the government failed to disclose impeachment evidence."[32] The Tenth Circuit ruled, "'a waiver [is] knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it,'" and thus held, "[the defendant] understood that he was giving up his right to cross examine government witnesses."[33]

Second, to the extent that Mr. Gilchrist argues that he should be permitted to withdraw his guilty plea because the government did not disclose the *Bowling* case in time for him to use the information about Agent McCue at the suppression hearing, his argument also fails.  Initially, the court notes that the Tenth Circuit recently indicated, albeit in dicta, that *Brady's* disclosure requirements likely do not apply at the motion to

---

ensure that the government will provide information establishing the factual innocence of the defendant, as well as Rule 11 safeguards, diminish any "concern that, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty").

[31]*United States v. Johnson*, 369 F. App'x 905, 906 (10th Cir. 2010) (granting motion to enforce appeal waiver and dismissing appeal).

[32]*Id.*

[33]*Id.* at 906–07 (quoting *Ruiz*, 536 U.S. at 629) (emphasis in original).

suppress stage of the case. In *United States v. Lee Vang Lor*, the Court stated, "Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or to punishment.'"[34] But even if the court were to determine that *Brady* and *Giglio* were relevant at the suppression stage, the court would conclude the government did not violate the *Brady* standard. Under *Brady*, a defendant must show the prosecution suppressed evidence that was favorable to the defendant *and* material to a defense.[35]

The government argues that it did not "suppress evidence" of the *Bowling* case because the case was a matter of public record and not solely in the possession or control of the government.[36] The court finds direct support for the government's argument in *United States v. McDaniel*.[37] There, the defendant sought a new trial after he learned the government failed to disclose information about *Bowling*, specifically, that Judge Robinson had found Agent McCue's version of the events offered in that case lacking in credibility.[38] At the defendant's trial in *McDaniel*, Agent McCue had testified that he had participated in the defendant's arrest and identified the defendant's voice on intercepted

---

[34] 706 F.3d 1252, 1256 (10th Cir. 2013) (quoting *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir.1999)).

[35] *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002).

[36] Doc. 1184 at 7–8.

[37] No. 07-20168, 2011 WL 5331663, at *3 (D. Kan. Nov. 7, 2011).

[38] *Id.* at *4.

phone calls. The presiding U.S. District Judge, John W. Lungstrum, held there was no *Brady* violation because the information from *Bowling* was available to the defendant from another source: "Here, evidence of pending litigation against Agent McCue was public record and was available to the defendant from another source. Thus, the government did not suppress evidence as the pending litigation against Agent McCue was not wholly within control of the prosecution or its agents."[39] Given this on-point caselaw, the court cannot find that Mr. Gilchrist's *Brady* rights were violated at the suppression hearing.

The court concludes that Mr. Gilchrist has not established that his plea was not knowing or voluntary. Accordingly, this factor weighs in the government's favor.

*Whether the defendant has asserted his innocence.* Mr. Gilchrist claims in his motion to have "always maintained his innocence of the conspiracy charge he pled to in Count I of the Indictment."[40] But Mr. Gilchrist admits he met Mr. Sykes on one occasion and purchased cocaine from Mr. Sykes on three to four occasions through a third party. Moreover, Mr. Gilchrist's assertion of innocence is completely belied by his plea agreement and admissions, made under oath, at the plea colloquy.[41] In pleading guilty,

---

[39]*Id.*

[40]ECF doc. 1166 at 8.

[41]*See United States v. Ferguson*, No. 08-10229-01-WEB, 2009 WL 1360216, at *3 (D. Kan. May 13, 2009) ("At the time of his plea of guilty, [defendant] assured the court—under oath—that he was guilty of the offense. He now states directly to the contrary. His explanation for the inconsistency is unclear and unconvincing.").

Mr. Gilchrist admitted the facts constituting the elements of the conspiracy offense.[42] He also stated that he believes the government has the evidence to prove these factual allegations. Mr. Gilchrist does not now claim that he made any false statements during the plea colloquy.[43] "While an assertion of innocence may, in some cases, satisfy [this] factor, the 'mere assertion of a legal defense is insufficient; the defendant must present a credible claim of legal innocence.'"[44] This factor weighs against permitting withdrawal.

*Whether withdrawal would prejudice the government.* Although "[s]ome degree of prejudice is inevitable when the Court permits a defendant to withdraw his plea,"[45] the government alleges no specific prejudice in this instance. A trial is scheduled to begin in March 2014 for some of Mr. Gilchrist's co-defendants in this case. Mr. Gilchrist could be added to that trial docket at minimal extra cost to the government. Thus, this factor is not significant in this case.

*Whether the defendant delayed in filing his motion, and if so, the reason for the delay.* Mr. Gilchrist has not demonstrated his motion to withdraw was timely. He does not state when he learned of the information concerning Agent McCue—if it was shortly

---

[42] *See* ECF doc. 932 at 3 & Exh. A.

[43] *See United States v. Byrum*, 567 F.3d 1255, 1264 (10th Cir. 2009) ("Even on appeal he does not disclaim his admissions of guilt at the plea colloquy.").

[44] *Id.* (quoting *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007)).

[45] *United States v. Calvin*, No. 12-20006-01-KHV, 2013 WL 491939, at *2 (D. Kan. Feb. 8, 2013).

after the entry of his guilty plea in August 2013, then the four-month delay in filing this motion is unreasonable.[46] Mr. Gilchrist does make the conclusory statement that any delay in filing his motion resulted from "the complexity of the case, the voluminous discovery, and the time constraints" on his counsel.[47] But, without any specific facts demonstrating the delay was reasonable, this factor weighs against allowing the withdrawal.

*Whether withdrawal would substantially inconvenience the court or waste judicial resources.* Any withdrawal of a plea is inconvenient to the court and wastes judicial resources.[48] But as noted above, another trial in this case is on the court's schedule for March 2014. Mr. Gilchrist could be added to that docket without much inconvenience or cost to the court, making these factors a wash.

*Whether close assistance of counsel was available to the defendant.* There is no dispute Mr. Gilchrist had competent counsel advising him during the process of both his suppression motion and plea. This factor weighs in the government's favor.

*Balance of the factors.* The balance of factors weighs against allowing withdrawal of Mr. Gilchrist's guilty plea. Taken together, the court concludes the circumstances do

---

[46]*See id.* (three-month delay weighed against defendant); *United States v. James*, No. 10-20129-08-KHV, 2011 WL 2463637, at *1 (D. Kan. June 21, 2011) (ten-week delay weighed against defendant); *United States v. Gibson*, 176 F.3d 489, 1999 WL 298181, at *3 (10th Cir. 1999) (Table) (three-month delay weighed against defendant).

[47]ECF doc. 1166 at 8.

[48]*Calvin*, 2013 WL 491939, at *2–3.

not show a fair and just reason for permitting Mr. Gilchrist to withdraw his plea of guilty.

Mr. Gilchrist's motion to disqualify Ms. Morehead is predicated on the notion that she had an obligation to disclose the *Bowling* case. The court has found that Ms. Morehead had no such obligation. The motion to disqualify is therefore denied as moot.

IT IS THEREFORE ORDERED:

1. Mr. Gilchrist's motion to withdraw his guilty plea is denied.

2. Mr. Gilchrist's motion to disqualify Ms. Morehead is denied as moot.

3. Mr. Gilchrist's motion to continue the motion hearing is denied as moot.

Dated January 29, 2014, at Kansas City, Kansas.

s/ James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge