**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**   )<br>                                                             )<br>                         **Plaintiff,**         )<br>                                                             )     **CRIMINAL ACTION**<br>**v.**                                                    )<br>                                                             )     **No. 12-20066-40-KHV**<br>**CARLOS GILCHRIST,**                   )<br>                                                             )<br>                         **Defendant.**      )<br>_____) | |

**MEMORANDUM AND ORDER**

On March 6, 2014, the Court sentenced defendant to 180 months in prison and five years of supervised release.  This matter is before the Court on defendant's Motion For Compassionate Release (Doc. #2236) filed July 16, 2020.  On August 21, 2020, the Office of the Federal Public Defender filed a supplement in support of defendant's motion.  See Supplemental [Memorandum] Re: Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2262).  The government opposes defendant's motion.  See Government's Amended Response To Defendant's Motion[] For Compassionate Release (Doc. #2266) filed August 28, 2020.  For reasons stated below, the Court sustains defendant's motion.

**Factual Background**

Defendant currently is confined at FCI Yazoo City-Medium, a Bureau of Prisons ("BOP") medical facility in Yazoo City, Mississippi.  As of September 8, 2020, eight inmates and 16 staff members at FCI Yazoo City-Medium had tested positive for Coronavirus Disease-2019 ("COVID-19").  See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (accessed Sept. 8, 2020).  Seven of the eight inmates who tested positive have recovered.  See id.  Ten of the 16 staff members who tested positive have recovered.  See id.

Defendant states that because of asthma and his race, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it. With good time credit, defendant's projected release date is September 4, 2025. He asks the Court to release him and order that as a condition of his original term of supervised release, he serve two years in home confinement.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Defendant seeks compassionate release under Section 3582(c)(1)(A) based on the COVID-19 pandemic.

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, on March 30, 2020, defendant submitted a request for compassionate release and the

warden did not respond within 30 days. Accordingly, defendant has satisfied the exhaustion prerequisite to filing a motion for compassionate release.

Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied." United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. Mar. 26, 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories. United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1 (Nov. 1, 2018).[1] In December of

---

[1] Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—
(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(continued . . .)

2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the

---

[1](. . . continued)

    (ii)  The defendant is—
        (I)  suffering from a serious physical or medical condition,
        (II)  suffering from a serious functional or cognitive impairment, or
        (III)  experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  <u>Family Circumstances</u>.
    (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)  <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 1, 2018).

specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request.  See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based on his medical condition and the risk that he may contract COVID-19.  The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release.  See Government's Amended Response To Defendant's Motion[] For Compassionate Release (Doc. #2266) at 12–13.  The government maintains that a medical condition such as asthma during the COVID-19 pandemic satisfies the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Id. at 13.  Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his chronic asthma condition does not limit his ability to provide self-care within the prison environment. Subsections (B) and (C) also do not apply.[2]  Accordingly, for defendant to establish extraordinary and compelling reasons for release based on his medical condition and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of

---

[2] Subsection (B) does not apply because defendant is 45 years old.  See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age). Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances.  See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D).  To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).  Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference."  Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.  The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."  U.S.S.G. § 1B1.13, cmt. n.1(D).  In an unpublished decision, the Tenth Circuit implicitly recognized that courts now can make such a determination.  See Saldana, 807 F. App'x at 819–20.  In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.  See id.  In rejecting defendant's argument, the Tenth Circuit noted first that the district court considered defendant's post-conviction rehabilitation as a factor, but properly concluded,

consistent with 28 U.S.C. § 994, that rehabilitation alone is not an extraordinary and compelling reason for relief. Id. at 820. Next, the Tenth Circuit held that the district court lacked jurisdiction to reduce defendant's sentence based on post-sentencing developments in case law because the Section 1B1.13 commentary and BOP Program Statement 5050.50 did not identify a change in law as an "extraordinary and compelling reason" for relief. Id.[3] Notably, in addressing defendant's argument for a reduced sentence under the catchall provision of subsection (D) of the Section 1B1.13 commentary, the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons. The Court therefore concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release). But cf. United States v. Garcia, No. 4:05-cr-40098, 2020 WL 2039227, at *5 (C.D. Ill. Apr. 28, 2020) (First Step Act did not override policy statement because definition of "extraordinary and compelling reasons" does not directly conflict with text of First Step Act).

As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors

---

[3] After the Court has determined that a defendant has shown an extraordinary and compelling reason for a reduced sentence, it may consider post-sentencing developments in case law as part of the balancing of the sentencing factors under 18 U.S.C. § 3553(a). See United States v. Walker, No. 06-CR-00320-LTB, 2020 WL 5100250, at *4 (D. Colo. Aug. 21, 2020).

for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819. None of the factors specifically mention a defendant's medical condition, but this factor arguably is encompassed in defendant's "personal history." Id. (citing Program Statement 5050.50). In any event, the factors are nonexclusive and the catchall provision of subsection (D) encompasses those cases that do not satisfy the specific medical conditions listed in subsection (A) of the commentary. The Court therefore can consider whether defendant's medical condition—combined with the risk of contracting COVID-19—constitutes "other" extraordinary and compelling reasons for a reduced sentence. See United States v. Campanella, No. 18-CR-00328-PAB-12, 2020 WL 4754041, at *2 (D. Colo. Aug. 17, 2020) (because list of factors in Program Statement 5050.50 is "nonexclusive," court will consider whether defendant's medical condition is extraordinary and compelling reason for sentence reduction); United States v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa Apr. 29, 2020) (in addressing defense motion for compassionate release, district court can consider anything, or at least anything BOP could have considered); see also United States v. Alam, 960 F.3d 831, 835 (6th Cir. 2020) (compassionate release provision gives inmates option to seek release on health grounds).

The government argues that BOP medical records do not confirm that defendant currently suffers from asthma. While BOP records do not completely confirm that defendant currently suffers from asthma, the government has presented no evidence that he does not. On the other hand, Dr. K. Allen Greiner, M.D., who conducted a telemedicine visit with defendant on August 21, 2020, notes that defendant has used a nebulizer machine and an albuterol inhaler for decades. See Letter From Dr. Greiner (Doc. #2262-2) filed August 21, 2020. Dr. Greiner notes

that although defendant has never been hospitalized for asthma, he has had multiple emergency room visits for asthma exacerbations and has been prescribed steroids to avoid hospitalization. See id.  In addition, defendant states that he currently uses an albuterol inhaler twice daily.  See Motion For Compassionate Release (Doc. #2236) at 7.  Finally, defendant has submitted a prescription for an albuterol inhaler from 2014, near the time when BOP first housed him at FCI Yazoo City, as well as a prescription for an albuterol inhaler from August of 2020.  See Yazoo City FCC Prescription (Doc. #2267-1) filed August 28, 2020; Yazoo City FCC Prescription (Doc. #2269-1) filed September 2, 2020.  Defendant therefore has a documented history of asthma.[4]

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."  United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *Extraordinary*, Webster's Third International Dictionary, Unabridged (2020)).  "Compelling" means "tending to convince . . . by forcefulness of evidence."  Id. (quoting *Compelling*, Webster's Third International Dictionary, Unabridged (2020)).  After considering the factors in BOP Program Statement 5050.50, the Court finds that based on defendant's asthma and the risk of contracting COVID-19 in prison, he has shown exceptional and compelling reasons for a reduced sentence.

Next, the Court must determine whether a sentence reduction is warranted, and the extent of any reduction, under the applicable factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C.

---

[4] Defendant maintains that his race alone may elevate his risk of contracting COVID-19 and suffering severe illness.  See Supplemental [Memorandum] Re: Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2262) at 8–11.  In defendant's reply, he also argues that BOP records suggest that he may suffer from some level of hypertension. See Reply To Government's Response To Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. #2267) at 7.  Because other factors warrant release, the Court need not address these allegations.

§ 3582(c)(1)(A). The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing including the need to protect the public from further crimes of the defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct. See 18 U.S.C. § 3553(a).

Defendant has a significant criminal history related to drug trafficking. At the same time, he already has served approximately 99 months in prison (the equivalent of 116 months with good time credit). When combined with a special term of supervised release that includes 48 additional months of home confinement (to approximate defendant's original release date), a reduced sentence under Section 3582(c)(1)(A) is not inconsistent with the seriousness of the offense, the need for deterrence and the need to protect the public. In addition, defendant does not have a history of violence or possession of firearms. The Court originally imposed defendant's sentence consistent with his Rule 11(c)(1)(C) plea agreement. Even so, if defendant were sentenced today for the same offense, his sentencing range would be significantly lower because he would no longer qualify as a career offender under Section 4B1.1 of the Sentencing Guidelines. In light of defendant's current medical condition, the COVID-19 pandemic and the applicable factors under 18 U.S.C. § 3553(a), the Court finds that a sentence of time served with a special term of supervised release including home confinement of 48 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide defendant needed treatment in the most effective manner. See 18 U.S.C. § 3553(a)(2)(A)–(D). Accordingly, the Court reduces defendant's sentence of 180 months in prison to time served with a special term of supervised release to start immediately on his release

and to expire on September 4, 2024.[5]  During the special term of supervised release, defendant shall remain on home detention with video conference monitoring by the United States Probation Office.  Defendant shall remain subject to his standard term of supervised release of five years, which will begin immediately after the expiration of the special term of supervised release.

**IT IS THEREFORE ORDERED** that defendant's Motion For Compassionate Release (Doc. #2236) filed July 16, 2020 is **SUSTAINED**.  **The Court reduces defendant's sentence of 180 months in prison to TIME SERVED.   Defendant shall immediately begin a special term of supervised release which will expire on September 4, 2024.   All terms and conditions that apply to defendant's standard term of supervised release (as set forth in the Judgment In A Criminal Case (Doc. #1342) filed March 7, 2014 at 3) shall apply to defendant's special term of supervised release.   In addition, during the special term of supervised release, defendant shall be on home confinement and shall possess or have access to a telephone, smart phone or compatible device that will allow video conference monitoring by the United States Probation Office.   During the first 14 days of his special term of supervised release, defendant shall self-quarantine.   After the special term of supervised release expires on September 4, 2024, defendant will begin his standard term of supervised release of 60 months.**

Except as modified above, all other terms and conditions of the Judgment In A

---

[5] With good time credit, defendant's projected release date is September 4, 2025.  Defendant has completed the Drug Education Program and the Non-Residential Drug Treatment Program.  He is eligible for the Residential Drug Abuse Treatment Program and if he were to complete that program, he would be eligible for release on September 4, 2024.  Accordingly, defendant's special term of supervised release will expire on September 4, 2024, the earliest expected release date had he continued to remain in custody at a BOP facility.

**<u>Criminal Case</u> (Doc. #1342) filed March 7, 2014 shall remain in effect.**

    Dated this 9th day of September, 2020 at Kansas City, Kansas.

 
                                                  <u>s/ Kathryn H. Vratil</u>
                                                  KATHRYN H. VRATIL
                                                  United States District Judge